STATE of Minnesota, Appellant (C7–01–26), Respondent (C9–01–44),

v.

Nicole Renee GEBECK, Respondent (C7–01–26), Appellant (C9–01–44).

Nos. C7–01–26, C9–01–44.

Court of Appeals of Minnesota.

Oct. 30, 2001.

Mike Hatch, Attorney General, St. Paul; and Amy Klobuchar, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, for appellant.

Frederic Bruno, Timothy Richard Anderson, Frederic Bruno & Associates, Minneapolis, for respondent.

Considered and decided by TOUSSAINT, Chief Judge, PETERSON and HARTEN, Judges.

## OPINION

TOUSSAINT, Chief Judge.

In these consolidated appeals, appellant Nicole Gebeck challenges her conviction for criminal vehicular homicide for driving "while having an alcohol concentration of 0.10 or more, as measured within two hours of driving," claiming the record contains no proof that the blood test was completed within two hours of the accident. Gebeck also challenges the court's 1.5 upward durational departure from the presumptive sentence of 48 months. In turn, the state appeals the court's downward dispositional departure. We affirm.

## FACTS

At about 11:00 p.m. on February 16, 2000, Nicole Gebeck drove her car down the wrong side of Interstate 94 for six to eight miles until her vehicle collided head-on with a vehicle driven by Stanley Croissant. Her speed was estimated at 85 mph. Croissant died at the scene from chest injuries.

Gebeck is a 30–year–old, single mother of two, with a 1993 prior conviction for driving-while-under-the-influence and two driving-after-revocation offenses on record.

The night of the accident, she had been drinking with friends at a bar in Minneapolis. She recalled having "6–8 mugs of beer and a Purple Hooter." Her last recollection that evening was of leaving the bar at about 9:30 p.m.

From the accident scene, Gebeck was taken to a hospital where a blood sample was taken. The parties stipulated that the sample was taken within two hours of the accident. The sample was then sent to the Bureau of Criminal Apprehension, which received it on February 18, 2000. The test was completed on March 2, 2000, and returned to the State Patrol on March 10. The results indicated a .25% alcohol concentration.

On April 20, 2000, Gebeck was charged with one count of criminal vehicular homicide under Minn.Stat. § 609.21, subd. 1(4) (2000). On April 26, she began an outpatient treatment program, which she completed on July 21. Gebeck waived her right to a jury trial, and the parties submitted the case for a court trial on a stipulated record. On October 10, 2000, the district court concluded 'that Gebeck was guilty as charged.

The district court departed from the 48 month executed presumptive sentence and committed Gebeck to the custody of the Commissioner of Corrections for six years, staying execution for 10 years on multiple conditions. Among the conditions, the district court ordered Gebeck to serve 365 days in the workhouse, 275 of those immediately. Beginning October 10, 2001, and for each of four years thereafter, the court ordered Gebeck to serve 18 days in the workhouse with no weekend furloughs. For the following four years, the court ordered her to serve 15 days of Sentence to Service and 120 hours of Community Service each year.

## ISSUES

1. Does the language "as measured within two hours of driving" in section 609.21, subd. 1(4) of the criminal-vehicular-homicide statute require that a blood sample be completely tested and analyzed and a driver's alcohol concentration be determined within two hours of the time of driving?

2. Did the sentencing court abuse its discretion in making a downward dispositional departure from the presumptive sentence?

3. Did the sentencing court abuse its discretion in making an upward durational departure from the presumptive sentence?

## ANALYSIS

### · I.

Whether a district court has properly construed a statute is a question of law subject to de novo review. *State v. Murphy*, 545 N.W.2d 909, 914 (Minn.1996).

Gebeck argues that the criminal-vehicular-homicide statute, Minn.Stat. § 609.21, subd. 1(4) (2000), requires that the testing of a driver's blood be completed within two hours of driving. The statute criminalizes driving and causing a death "while having an alcohol concentration of 0.10 or more, as measured within two hours of the time of driving." Minn.Stat. § 609.21, subd. 1(4). The district court concluded that the statute as written is ambiguous, and that the legislature intended only that the blood sample be collected within two hours of driving. We agree.

A statute is ambiguous only when it is subject to more than one reasonable interpretation. *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn. 1999). Here, the parties effectively propose two different readings of the statutory phrase "as measured": Gebeck argues

that the statute criminalizes causing a death while having an alcohol concentration of 0.10 or more "as measured [*in a test completed*] within two hours of the time of driving," while the state argues that the statute means "as measured [*by a sample taken*] within two hours of the time of driving." Where two reasonable interpretations rely on supplemental language to clearly articulate the legislation's meaning, the statute is ambiguous and subject to statutory construction.

Gebeck urges this court to conclude the statute is unambiguous. She relies primarily on dictionary definitions of the word "measured" to conclude that "as measured" requires a final test result within two hours of driving. While dictionaries clarify that to "measure" is to "quantify," they do not resolve what precise act toward quantifying alcohol concentration need be performed "within two hours" of driving. Consequently, we must consider the manifest intent of the legislature.

In determining the legislature's intent, this court may consider:

(1) The occasion and necessity for the law;

(2) The circumstances under which it was enacted;

(3) The mischief to be remedied;

(4) The object to be attained;

(5) The former law, if any, including other laws upon the same or similar subjects;

(6) The consequences of a particular interpretation;

(7) The contemporaneous legislative history; and

(8) Legislative and administrative interpretations of the statute.

Minn.Stat. § 645.16 (2000). It is presumed that the legislature *does not* intend a result that is "absurd, impossible of execution, or unreasonable," and *does* intend

the entire statute to be effective and certain and to favor a public over a private interest. Minn.Stat. § 645.17 (2000).

Preliminarily, we note that the criminal-vehicular-homicide statute is one part of Minnesota's legislative scheme to deter impaired driving. *See American Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 278 (Minn.2000) (stating that operation of statute may only become clear when read in conjunction with surrounding sections or whole act). Nearly identical "as measured" language is found in the traffic regulations governing impaired drivers. Minn.Stat. § 169.121, subd. 1(e) (1998) (now codified at Minn.Stat. § 169A.20, subd. 1(5) (2000)) (prohibiting driving "when the person's alcohol concentration as measured within two hours of the time of driving is 0.10 or more"). Both statutes are tied to the law governing chemical tests for intoxication found in the implied consent statute, Minn.Stat. § 169A.123 (2000), and the rules promulgated by the Commissioner of Public Safety, Minn. R. 7502.0200 (1999).

The legislature contemplated a two-step process in blood testing. *See, e.g.,* Minn.Stat. § 169A.121, subd. 2(d) (2000) (providing for affirmative defense of consuming alcohol after driving and "before the *administration of the evidentiary test* to cause the defendant's alcohol concentration to exceed 0.10" (emphasis added)); *id.,* subd. 2(a) (court may admit "evidence of the presence or amount of alcohol * * * in the person's blood, breath, or urine *as shown by an analysis* of those items" (emphasis added)); *see also* 1984 Minn. Laws, ch. 622, §§ 5, 7 (legislature added "as measured" language and deleted redundant language referencing the two-step process) (now codified as Minn.Stat. § 169A.20, subd. 1(5) (2000)). The first step is "administering" the test which means collecting the specimen for the pur-

pose of analyzing it to determine alcohol concentration. Minn. R. 7502.0100, subp. 2 (1999). The second step is "interpreting or evaluating" the specimen "to derive an alcohol concentration reading from analysis" of the sample. *Id.,* subp. 4. Because the illegal alcohol concentration must relate temporally to the driving, it is the collection of the blood sample that must take place within two hours of driving. The statutorily imposed two-hour time frame thus ensures the reliability of the sample as an evidentiary tool.

The legislature requires that section 609.21's provisions "shall be construed according to the fair import of its terms* * * and to effect its purposes." Minn.Stat. § 609.01, subd. 1 (2000). In carrying out these general principles, we must recognize that there is a need for testing and a need to ensure that the illegal alcohol concentration fairly relates to the alleged driving. Both needs are satisfied when the sample is taken within two hours. They would be frustrated if the laboratory analysis were required within two hours of driving. This court, if possible, must give effect to all of the statute's provisions. Minn.Stat. § 645.16 (2000). Therefore, we conclude that the state was required to show that Gebeck had an illegal alcohol concentration within two hours of driving but not that the test was completed within that time.

## II.

■ The district court may depart from the presumptive sentence provided by the guidelines when the case involves "substantial and compelling circumstances." Minn. Sent. Guidelines II.D. A decision to depart from the sentencing guidelines rests within the district court's discretion and will not be reversed absent a clear abuse of that discretion. *State v. Givens,* 544 N.W.2d 774, 776 (Minn.1996).

*Dispositional Departure*

■ Appellate courts do not generally interfere with a district court's decision to depart downward. *State v. Donnay,* 600 N.W.2d 471, 473 (Minn.App.1999), *review denied* (Minn. Nov. 17, 1999). The general rule is that probation may be imposed in lieu of an executed sentence when the defendant is particularly amenable to probation. *See State v. Love,* 350 N.W.2d 359, 361 (Minn.1984). Concomitantly, a finding that a defendant is "unamenable to correction by imprisonment" can support a departure. *State v. Malinski,* 353 N.W.2d 207, 209 (Minn.App.1984) (citing *State v. Heywood,* 338 N.W.2d 243 (Minn.1983)), *review denied* (Minn. Oct. 16, 1984). Amenability to probation may alone support a departure, but "a *finding* of amenability to *probation* is not a prerequisite." *Donnay,* 600 N.W.2d at 474 (emphasis in the original). The so-called *"Trog* factors" aid the district court in determining amenability to probation. *State v. Trog,* 323 N.W.2d 28, 31 (Minn.1982). They include age, prior record, remorse, cooperation, attitude while in court, and the support of friends or family. *Id.*

■ The district court considered the *Trog* and other factors in deciding the appropriate disposition. It specifically found that the *Trog* factors militated toward probation and that Gebeck was amenable to probation and treatment. The district court opined that probation provided greater leverage to assure Gebeck's success in rehabilitation.

The record supports Gebeck's amenability to treatment. Her discharge summary from the treatment program in July 2000 is very optimistic, noting Gebeck's abstinence, investment in the treatment process, receptivity to feedback and challenges, and giving a great deal of thought and effort to assignments. Gebeck's expe-

rience in treatment indicates that she is "observably yielding, easily managed," and has an apparent "motive to reform." These characteristics also suggest amenability to probation. *See Malinski,* 353 N.W.2d at 210.

Under the district court's conditions of probation, every year for ten years, Gebeck will face periods of incarceration or community service, and every day, she will face a six-year sentence if she decides to drink and drive again. The probation thus provides the district court with greater leverage to assure her success and the public's safety. *See State v. Dokken,* 487 N.W.2d 914 at 918 (Minn. App.1992) (stating that greater leverage for treatment was available through strict terms of probation rather than execution of presumptive sentence). The district court's decision to make a downward dispositional departure was not an abuse of discretion. Therefore, we affirm.

*Durational Departure*

■ "[A]s to duration, a sentencing court must 'analyze the act as compared with other acts constituting the same offense.'" *State v. Behl,* 573 N.W.2d 711, 713 (Minn.App.1998), *review denied* (Minn. Mar. 19, 1998) (quoting *State v. Herrmann,* 479 N.W.2d 724, 728–29 (Minn.App. 1992), *review denied* (Minn. Mar. 19, 1992)). Here, the district court ordered an upward durational departure (1.5). The district court specifically stated that the "upward departure was made to ensure that Gebeck has sufficient threat of incarceration that she will honor every term of her 10–year probation." The district court later in its decision also stated: "To the extent that driving the wrong way at 85 miles per hour with a .25% blood alcohol reading may justify an upward departure, that departure up to a six year term is granted."

Other criminal-vehicular-homicide cases with similar aggravating factors have justified a durational departure. *See, State v. Anderson,* 356 N.W.2d 453, 454 (Minn.App. 1984) (defendant's egregious conduct included driving at excessive speed under influence of six or seven "rum cokes" and five beers and leaving scene of accident). In *State v. Chaklos,* 528 N.W.2d 225 (Minn. 1995), the court·identified several factors that would "objectively justify" a departure in a criminal-vehicular-homicide case: a very high alcohol concentration, driving without insurance, and trying to pin blame for the offense on someone else. *Id.* at 228 n. 2. The *Chaklos* court also noted that "the fact that the conduct of defendant indirectly but significantly affected the victim's daughter by depriving her of a mother" was also an aggravating factor. *Id.* Here, the district court's durational departure was not an abuse of discretion. Therefore, we affirm.

## DECISION

Because the criminal-vehicular-homicide statute does not require that the state complete the laboratory analysis phase of the blood testing within two hours of driving, Gebeck's conviction is affirmed. Because the sentencing court had sufficient reasons to depart dispositionally and durationally from the 48 month presumptive sentence for criminal vehicular homicide, Gebeck's sentence is affirmed.

**Affirmed.**