STATE of Minnesota, Appellant,

v.

Geoffrey HICKMAN, Respondent.

No. A03–94.

Court of Appeals of Minnesota.

Aug. 5, 2003.

Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, Patrick C. Diamond, Senior Assistant County Attorney, Minneapolis, MN, for appellant.

Paul C. Engh, Minneapolis, MN; and Robert G. Malone, St. Paul, MN, for respondent.

Considered and decided by SCHUMACHER, Presiding Judge, RANDALL, Judge, and KALITOWSKI, Judge.

## OPINION

ROBERT H. SCHUMACHER, Judge.

This appeal is from a sentence imposed for five counts of tax evasion under Minn. Stat. § 289.63, subd. 1(a) (1998). The state argues that the district court abused its discretion in granting respondent Geoffrey Hickman a downward dispositional departure. We affirm.

## FACTS

Hickman was charged in March 2002 with five counts of felony tax evasion for failing to file Minnesota state tax returns for the 1996, 1997, 1998, 1999, and 2000 tax years. The complaint alleged that Hickman was a Northwest Airlines pilot, had flown out of the Minneapolis–St. Paul International Airport since 1989, had built a home in Mendota Heights on which he claimed a homestead exemption, and had claimed a Florida residence during those tax years. The complaint alleged that Hickman listed Florida as his residence on his payroll withholding forms at Northwest, although there was no evidence that he lived in Florida or maintained more than minimal contacts with that state. His ex-wife and children lived in Florida.

On November 13, 2001, investigators for the Minnesota Department of Revenue obtained and executed a search warrant at Hickman's Mendota Heights residence. The officers, with Hickman's cooperation, seized a number of records regarding his residency status and his personal income for the relevant tax years. Hickman's W–2 forms disclosed that he earned $78,681 in 1996, $110,962 in 1997, $173,699 in 1998, $203,394 in 1999, and $185,578 in 2000. Hickman did not file a Minnesota tax return for any of those years. His total state tax liability was about $49,000.

The complaint alleged that although Hickman maintained a post office box in Carabelle, Florida, that box bore no relationship to any real property, and police in that small community knew nothing of Hickman. Hickman had applied for, and received, a Florida driver's license, and had registered to vote in Florida but had been removed from Florida voting rolls after never having voted there. The complaint alleged that Hickman's Mendota Heights home was well furnished and contained a plethora of personal records, personal property, and personal mail addressed to that residence. The complaint alleged that Hickman admitted to investigators that he resided there since 1995 and that he had not filed a .Minnesota tax return since 1994, when he won $100,000 in the state lottery.

Hickman waived his right to a trial by jury, and the case was tried to the court. The district court issued an order finding that Hickman "knew of his obligation to file Minnesota individual income tax returns for all relevant years and willfully

failed to file the required returns." The court found Hickman guilty and ordered a presentence investigation.

The presentence investigation detailed Hickman's explanation for his conduct, including Hickman's statement that he had claimed Florida as his state of residence since the 1960's when he was in the Air Force. Hickman also claimed that he did not read the homestead exemption application form and that he believed he could validly claim Florida residency because he owned a home there, his children were in school there, and he planned eventually to live there. The presentence investigation noted that Hickman also stated that he tried to change his residency status in Northwest's payroll computer system in October 2001, the month before the search warrant was executed, but was unable to correct it until December. The presentence investigation noted that Hickman had paid the taxes due for 1996–2000, plus penalties and interest, and that Hickman was a low risk to reoffend. Noting there were both aggravating and mitigating factors, the presentence investigation stated that "incarceration is appropriate for such offense behavior."

The district court, stating it was departing from the guidelines, stayed imposition on all five counts. The court imposed two-year probationary periods on each count, with two being consecutive to the first probationary period, making a total of six years of probation. In support of its dispositional departure, the court cited Hickman's amenability to probation, his acceptance of responsibility for his acts, his "lifetime pattern of law-abiding behavior," and the fact that he had accrued all his criminal history points at one sentencing. The court then justified the consecutive service of three of the probationary periods, which it construed as a departure, on the grounds that Hickman's tax evasion constituted a major economic offense.

## ISSUES

1. Did the district court abuse its discretion in staying Hickman's sentence?

2. Did the district court impose a non-felony sentence, and, if so, was it reversible error to do so?

## ANALYSIS

1. The decision to depart from the sentencing guidelines rests within the district court's discretion and will not be reversed absent a clear abuse of discretion. *State v. Givens,* 544 N.W.2d 774, 776 (Minn.1996).

The state argues that the district court imposed a downward dispositional departure in staying imposition of Hickman's sentence, and that this departure was not supported by substantial and compelling mitigating circumstances. In particular, the state argues that Hickman is not amenable to probation, in part because he did not take responsibility for "willfully" failing to file a Minnesota tax return, which is an element of the felony offense of which he was convicted.

The district court may depart from the presumptive sentence if it specifies "substantial and compelling" circumstances to support the departure. *State v. Law,* 620 N.W.2d 562, 564 (Minn.App. 2000), *review denied* (Minn. Dec. 20, 2000). This court will generally not interfere with a district court's decision to depart downward. *State v. Gebeck,* 635 N.W.2d 385, 389 (Minn.App.2001). The court may do so, however, if it has a "strong feeling" that the departure is inappropriate. *Law,* 620 N.W.2d at 565 (quoting *State v. Malinski,* 353 N.W.2d 207, 209 (Minn.App.1984), *review denied* (Minn. Oct. 16, 1984)). A defendant's amenability to probation may

by itself support a downward dispositional departure. *Gebeck,* 635 N.W.2d at 389.

The state argues that Hickman is not amenable to probation because he continues to minimize his criminal conduct. The state also argues that the downward departure reflects an improper reliance on prohibited employment factors.

■■■ The state's first argument confuses, to a certain degree, amenability to probation and amenability to treatment. *See State v. Donnay,* 600 N.W.2d 471, 474 (Minn.App.1999) (noting defendants without treatment needs are not disqualified from probation), *review denied* (Minn. Nov. 17, 1999). The presentence investigation did not recommend any treatment program for Hickman, nor did the district court make treatment a condition of probation. Admitting guilt, and taking responsibility for one's criminal conduct, is a critical factor in an offender's amenability to treatment. *See generally State ex rel. Morrow v. LaFleur,* 590 N.W.2d 787, 792–93 (Minn.1999) (holding inmate was properly terminated from treatment program and disciplined because he refused to admit sexual offense). But amenability to probation depends on an offender's ability to comply with the conditions of probation and benefit from the opportunity for rehabilitation that probation affords. *See State v. Holland,* 421 N.W.2d 382, 389 (Minn. App.1988) (reversing execution of presumptively stayed sentence where record showed defendant was willing and able to comply with requirements of probation officer despite disruptive behavior in court). Hickman has already paid the state for the unpaid taxes, meeting his duty to make restitution, which is a frequent condition of probation. The presentence investigation noted there is a low risk that Hickman would reoffend.

■■■ An offender's remorse is a relevant factor in assessing his amenability to a probation that does not include treatment. *See Donnay,* 600 N.W.2d at 474 (concluding defendant's remorse was a factor making him particularly amenable to probation that did not include treatment). The supreme court has identified a non-exclusive list of factors as relevant to amenability to probation, those being "the defendant's age, his prior record, his remorse, his cooperation, his attitude while in court, and the support of friends and/or family." *State v. Trog,* 323 N.W.2d 28, 31 (Minn. 1982). Although Hickman's minimization of his offense indicates he was less than fully remorseful, remorse is only one of the Trog factors. And Hickman accepted responsibility for his conduct by making prompt repayment.

Hickman's age (59), his lack of any criminal record, his cooperation, especially with the Minnesota Department of Revenue agents who searched his home, and his positive attitude in court, all support the district court's conclusion that Hickman is particularly amenable to probation. The district court also properly cited as a mitigating factor the fact that Hickman accrued all his criminal history points in one sentencing. *See* Minn. Sent. Guidelines II.D.2.a. (4)(b).

The state's second argument challenges the district court's consideration of Hickman's employment status as an airline pilot in staying his sentence. The guidelines prohibit the court from considering occupation, employment history, and other "[e]mployment factors" as reasons for departure. Minn. Sent. Guidelines II.D.1.c. But the Trog factors support the district court's conclusion that Hickman is particularly amenable to probation. And the court did not cite Hickman's employment status as a factor in its decision.

The state also argues that prison sentences are necessary to deter serious tax

evaders like Hickman. But the district court imposed a 150–day jail term as a condition of probation. This lengthy period of incarceration, although not the equivalent of a prison sentence, is a significant deterrent to a white-collar criminal. The state's argument that the district court's sentence leaves the state no significant criminal sanction as a deterrent against tax evasion is without merit.

We conclude that the district court did not abuse its discretion in finding sufficient mitigating factors to warrant a downward dispositional departure. Therefore, we need not address whether the district court could have imposed the same stayed sentence without departing by finding Hickman's five offenses were part of a single behavioral incident and therefore Hernandez sentencing could not be used. *See generally State v. Hernandez*, 311 N.W.2d 478, 479–81 (Minn.1981) (holding that defendant's criminal history score may be increased for other convictions sentenced on same day that are not part of same behavioral incident).

2. The state argues that the district court improperly attempted to impose a non-felony sentence based on Hickman's employment status, although the state contends that attempt was unsuccessful.

A felony conviction is "deemed to be" a gross misdemeanor if the "sentence imposed" is within the limits for a gross misdemeanor sentence. Minn.Stat. § 609.13, subd. 1(1) (2000). It may also be "deemed to be" a misdemeanor if the imposition of sentence is stayed and the defendant successfully completes probation. *Id.,* subd. 1(2). At sentencing, the district court expressed the opinion, in response to a question from the prosecutor, that the convictions were "deemed to be a gross misdemeanor," because there was a two-year probationary period for each. There are five sentencing orders in the file, none of which indicate the level of conviction.

■ We conclude it is unnecessary to address the state's argument because the level of Hickman's convictions appears to have no present effect on the criminal prosecution. A party is not entitled to appellate review of an advisory opinion of the district court. *State v. Johnson,* 291 Minn. 407, 192 N.W.2d 87, 92 (1971); *see State v. Roesch,* 355 N.W.2d 754, 755 (Minn.App.1984) (holding that language in trial court memorandum issued following remand expressing intent to rule differently if supreme court reversed court of appeals could not be reviewed on appeal because it had no legal effect), *review denied* (Minn. Dec. 20, 1984). The district court stayed imposition of sentence, postponing the determination of the length of any executed term of incarceration until the day, should it arrive, that the stay is revoked.

The state makes no attempt to show that the district court's opinion that the sentence is a gross misdemeanor sentence has any present effect on the criminal prosecution. Accordingly, we do not address it.

## DECISION

The district court did not abuse its discretion in imposing a downward dispositional departure based on Hickman's particular amenability to probation.

**Affirmed.**