*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-0087**

State of Minnesota,
Respondent,

vs.

N.K.I.,
Appellant.

**Filed September 15, 2014**
**Affirmed**
**Kirk, Judge**

Hennepin County District Court
File Nos. 27-JV-10-6764, 27-CR-13-38556

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Susan J. Andrews, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Hudson, Presiding Judge; Stauber, Judge; and Kirk, Judge.

UNPUBLISHED OPINION

**KIRK**, Judge

Appellant N.K.I. challenges the revocation of his extended jurisdiction juvenile (EJJ) probation, arguing that the district court abused its discretion by finding that he violated the terms and conditions of his probation and that the need for confinement outweighs the policies favoring probation. We affirm.

**FACTS**

On July 10, 2010, N.K.I. and two other juveniles used their hands, feet, and a shovel to beat J.T.G., a 17-year-old immigrant from Liberia, to death. On July 26, respondent State of Minnesota charged N.K.I. with aiding and abetting second-degree intentional murder, in violation of Minn. Stat. § 609.19, subd. 1(1) (2008), and second-degree felony murder, in violation of Minn. Stat. § 609.19, subd. 2(1) (2008), and moved to certify him as an adult.

The parties reached a plea agreement where N.K.I. pleaded guilty to second-degree felony murder, and in exchange, the state dismissed the second-degree intentional murder charge. The parties also agreed to convert the adult-certification motion to an EJJ motion and designate him EJJ. In accordance with the plea agreement, the district court accepted N.K.I.'s guilty plea and designated him EJJ. The district court sentenced N.K.I. to 180 months in prison, stayed that sentence, and placed him on EJJ probation until his 21st birthday. The district court ordered N.K.I. to attend and successfully complete the program at Glen Mills Academy and comply with the terms of his probation contract, including the following: remain law-abiding; remain in contact with his probation

officer; attend EJJ group meetings; attend an education program; comply with curfew; inform his probation officer of changes in his residence or employment; and refrain from alcohol or illegal drug use. The district court later modified N.K.I.'s placement due to funding issues and ordered N.K.I. to successfully complete the program at Rite of Passage in Nevada.

N.K.I. attended Rite of Passage from December 6, 2010, through June 28, 2012, when Hennepin County suspended its contract with the program. Records from N.K.I.'s residency at Rite of Passage document that he progressed through the program without any major incidents, but N.K.I.'s case manager noted in a June 2012 quarterly report that "[N.K.I.] started to act out by ignoring staff directives, cussing at staff, and having a non-caring attitude. . . . [N.K.I.] did have a slip up while he was on his home pass and he drank alcohol."

In July 2012, the district court ordered N.K.I. to continue treatment at Auburn Lakes Academy and follow all rules of that placement. Six months later, Auburn Lakes terminated N.K.I.'s placement because he refused to participate in groups and program structure, failed to regularly attend school, and was disrespectful and rude to staff. N.K.I.'s probation officer filed a report with the district court alleging that N.K.I.'s termination from Auburn Lakes constituted a violation of his EJJ probation.

In February 2013, the district court held a contested probation-violation hearing, and N.K.I. admitted violating the terms and conditions of his EJJ probation when he failed to follow the rules at Auburn Lakes. The district court elected not to revoke N.K.I.'s probation and ordered him instead to successfully complete the treatment

program at Minnesota Correctional Facility-Red Wing.  The district court warned N.K.I. that the treatment program at Red Wing was his final opportunity to successfully complete his EJJ probation.  The district court stated on the record:

> And so bottom line is I am going to give you another chance, but this is all I got.  You have to make this work. . . .  And if it does not work, St. Cloud is my only other option, [N.K.I.]
>
> . . . .
>
> The prison time is still hanging over your head and this is a treatment program that I know can work if you put the effort into it.

N.K.I. signed another EJJ contract ordering him to enter and successfully complete the residential program at Red Wing, and he entered that program.

In August, the district court held a six-month review hearing.  At the time, N.K.I. was working on completing level three of a six-level treatment program.  At the hearing, the prosecutor expressed concern about N.K.I.'s lack of progress in completing level three, but reluctantly conceded that N.K.I. should remain at Red Wing for an additional three months.  Mark Joseph, N.K.I.'s probation officer, filed a disposition-review report with the district court that painted a conflicted picture of N.K.I.'s performance at Red Wing.  While N.K.I. was regularly participating in individual therapy and was making adequate progress towards almost all of his goals, he was demonstrating the same types of behaviors that resulted in the termination of his placement at Auburn Lakes, such as refusing to accept decisions of authority, acting entitled, blaming others, being self-centered, and failing to keep his negative attitude in check.

4

The district court warned N.K.I. on the record that he had to demonstrate progress in his treatment at Red Wing. The district court issued a disposition-modification order concluding that N.K.I. had made sufficient progress to stay in Red Wing for an additional three months and scheduled a review hearing in October.

On October 25 and November 6, Joseph sent two disposition-review reports to the parties and the district court that outlined numerous probation violations committed by N.K.I. On November 12, Joseph submitted a notification of violation hearing, alleging that N.K.I. failed to follow Red Wing's rules on six occasions from August through November. The district court held a contested probation-violation hearing, and the state submitted numerous exhibits documenting N.K.I.'s infractions, including lying and misrepresentation, threatening others and disorderly conduct, harassment, swearing, arguing with staff, and disobeying a direct order. The state also submitted a November 6 e-mail from a corrections security caseworker to Joseph stating that N.K.I. remained unengaged in his treatment and had recently told a warden that he was at Red Wing on a probation violation and that he had already served his time for the "other crime." Joseph testified that based on the totality of the case and his familiarity with N.K.I., there were "not really" any policies favoring keeping him on probation and recommended revocation of his EJJ probation.

Erik Meier, a program lieutenant at Red Wing, testified that the average stay for a resident at Red Wing is 14 months and it typically takes a resident three to five months to complete level three. Meier testified that residents demonstrate successful completion of level three through improved behavior and fewer regressions. One of the requirements of

5

level three is that the residents talk openly about their crime, but staff told Meier that N.K.I. had not discussed the crime with them and it was "difficult to detect [in N.K.I.] the level of remorse that would be [commensurate] to the crime." Meier acknowledged that level three is the most stressful phase of treatment, but N.K.I. continued to regress at this level and did not appear engaged in his treatment. The district court revoked appellant's EJJ probation and imposed the 180-month stayed sentence.

This appeal follows.

## D E C I S I O N

"The [district] court has broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *State v. Austin*, 295 N.W.2d 246, 249-50 (Minn. 1980). Before revoking probation, a district court must specify which condition was violated, find the violation to be intentional or inexcusable, and find that the need for confinement outweighs the policies favoring probation. *Id.* at 250. These same requirements apply when the state seeks to revoke EJJ probation. Minn. R. Juv. Delinq. P. 19.11, subd. 3(C)(2), (3); *State v. B.Y.*, 659 N.W.2d 763, 768-69 (Minn. 2003).

### A. First *Austin* factor.

The district court may revoke EJJ probation if it finds by "clear and convincing evidence that any provisions of the disposition order were violated, or if the probationer admits the violation." Minn. R. Juv. Delinq. P. 19.11, subd. 3(C)(1). The district court must avoid reflexive reactions to minor violations. *Austin*, 295 N.W.2d at 251.

6

N.K.I. argues that the district court abused its discretion when it prematurely concluded that he had failed to progress in treatment after only nine months at Red Wing. N.K.I. points out that he had not resided at Red Wing long enough for the district court to determine that he had constructively failed to complete treatment. N.K.I. contends that he was struggling to complete level three, which is the most stressful component of treatment, and he acted out from the stress.

There is very strong evidence in the record that N.K.I. was not successfully completing treatment. Appellant's probation officer and Red Wing staff all concluded that N.K.I. had regressed in completing level three of the program. Despite undergoing two years of treatment at Rite of Passage and Auburn Lakes and nine months at Red Wing, N.K.I. failed to complete level three, a level that normally takes residents three to five months to complete. The district court informed N.K.I. in February 2013 that the residential treatment program at Red Wing was his final opportunity to succeed in the juvenile system, and if he was not successful, it would execute his stayed sentence. At his six-month review hearing in August, the district court notified N.K.I. that his tenure at Red Wing had been extended for only three more months, and it expected him to demonstrate progress in his treatment. But N.K.I. repeatedly violated the conditions of his EJJ probation by refusing to participate in his treatment, displaying a negative attitude, and disrupting his classes and group therapy. N.K.I. informed staff that he did not need to make changes in his behaviors and that he wanted his EJJ probation revoked.

In its thorough and well-reasoned decision, the district court found that N.K.I. had failed to complete treatment because he "demonstrated a pervasive unwillingness to

7

accept blame for his own actions, address the underlying offense, and change his behavior." The district court noted that N.K.I.'s failure to complete the Red Wing program was not a "mere technical violation," but was an important term of his EJJ probation. The district court concluded that despite the fact that Red Wing has never discharged a resident, a juvenile can constructively fail out of Red Wing's treatment program by demonstrating behaviors and attitudes that show an unamenability to probation.

N.K.I. also committed numerous infractions that violated the terms of his EJJ probation. Under *Austin*, the district court could revoke N.K.I.'s EJJ probation for a single violation of his EJJ contract. *See Austin*, 295 N.W.2d at 250 (holding that before revoking probation, the district court must "designate the specific *condition* or conditions that were violated" (emphasis added)). The record supports the district court's findings that N.K.I. committed numerous violations of his EJJ probation, including disorderly conduct, harassment, threatening others, swearing and arguing with staff, interference with security procedures, and disobeying a direct order.

### B. Second *Austin* factor.

N.K.I. does not dispute the district court's findings that his EJJ probation violations were intentional and inexcusable.

### C. Third *Austin* factor.

The third *Austin* factor requires the district court to "balance the probationer's interest in freedom and the state's interest in insuring his rehabilitation and the public safety, and base their decisions on sound judgment and not just their will." *State v.*

8

*Modtland*, 695 N.W.2d 602, 606-07 (Minn. 2005) (quotations omitted). A district court may find that the third *Austin* factor is satisfied if any one of the following three sub-factors is present: if confinement is necessary to protect the public from further criminal activity by the offender; the offender is in need of correctional treatment which can be most effectively provided by confinement; or it would unduly depreciate the seriousness of the violation if probation was not revoked. *Austin*, 295 N.W.2d at 251.

N.K.I. argues that any concerns about public safety or his disruptive behaviors toward other residents could have been handled by continuing his confinement at Red Wing. Alternatively, N.K.I. contends that the severity of his infractions did not warrant revocation of his EJJ probation.

The district court made careful and thorough findings in support of its conclusion that the need for N.K.I.'s confinement outweighs the policies favoring probation. The district court properly noted that the purpose of N.K.I.'s EJJ probation was not to lock him up indefinitely at Red Wing until he is eventually released into the community when he turns 21. "[A]menability to probation depends on an offender's ability to comply with the conditions of probation and benefit from the opportunity for rehabilitation that probation affords." *State v. Hickman*, 666 N.W.2d 729, 732 (Minn. App. 2003). Because N.K.I. had shown through his actions that he is unamenable to probation supervision, he remains a grave risk to public safety. The district court found that "the last time N.K.I. was in an unstructured placement, he committed the underlying offense. . . . The [o]rders in this case have consistently focused on [N.K.I.'s] rehabilitation before release for public safety."

9

The district court examined N.K.I.'s entire probationary record to determine whether it should allow N.K.I. to continue on EJJ probation, and properly concluded that the public would be at risk if N.K.I. is released into the community because he is unable to follow the law, and commitment to the Department of Corrections would ensure that he will remain confined for a longer period of time. Moreover, failure to confine N.K.I. at this juncture would undermine the seriousness of his probation violations. The district court also noted on the record that N.K.I.'s disorderly conduct violation was very serious and could constitute a chargeable offense if he was not in treatment.

The record fully supports the district court's findings. N.K.I. is a convicted murderer who is unamenable to treatment while on probation. A September 2010 psychological evaluation indicated that N.K.I. has little empathy for others, has significant anti-social tendencies, and has a moderate to high risk to reoffend. Testimony at trial established that N.K.I. exhibited a lack of insight as to why he committed the crime as well as a lack of remorse.

For these reasons, we conclude that the district court did not abuse its discretion when it found under the third *Austin* factor that the policies favoring N.K.I.'s confinement outweighs the policies favoring probation.

**Affirmed.**