*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0897**

State of Minnesota,
Respondent,

vs.

Jesse James Niesen,
Appellant.

**Filed May 13, 2024**
**Affirmed**
**Wheelock, Judge**

Kanabec County District Court
File No. 33-CR-22-65

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Barbara McFadden, Kanabec County Attorney, Mora, Minnesota; and

Scott A. Hersey, Special Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rebecca Ireland, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Wheelock, Presiding Judge; Schmidt, Judge; and Kirk, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**WHEELOCK**, Judge

In this direct appeal from a judgment of conviction for kidnapping, appellant argues that the district court erred by (1) accepting his *Alford* plea because the state presented insufficient evidence of the intent element of the offense and (2) denying his motion for a downward dispositional departure. We affirm.

**FACTS**

On March 15, 2022, respondent State of Minnesota charged appellant Jesse James Niesen with kidnapping with intent to commit great bodily harm or terrorize in violation of Minn. Stat. § 609.25, subd. 1(3) (2020), false imprisonment in violation of Minn. Stat. § 609.255, subd. 2 (2020), and fifth-degree assault in violation of Minn. Stat. § 609.224, subd. 1(1) (2020). On August 30, 2022, Niesen entered an *Alford* plea[1] on the kidnapping charge as part of a plea agreement. In exchange for the plea, the state agreed to dismiss the other two charges.

At the plea hearing, Niesen acknowledged that he had reviewed the complaint and the state's evidence, understood the rights he was giving up, and had sufficient time to speak with his attorney about his decision to plead guilty. The state then described the evidence it would submit at trial. The state asserted that surveillance video and photographs would show that, on March 12, 2022, Niesen entered a Kwik Trip convenience

---

[1] "An *Alford* plea is a guilty plea in which a defendant maintains his innocence but pleads guilty because the evidence is sufficient to support a jury's determination of guilt." *Matakis v. State*, 862 N.W.2d 33, 35 n.2 (Minn. 2015) (citing *North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970)).

store, walked past the men's restroom into the women's restroom, and stayed there for approximately 90 minutes. The state explained that the victim, a 12-year-old girl, would testify that, while she was washing her hands in the restroom, Niesen approached her from behind, wrapped his arm around her neck, and started pulling her into a restroom stall while shushing her and telling her to be quiet. When she screamed, Niesen yelled out an "expletive" and ran out of the store. During the incident, Niesen was pulling her by her neck, which prevented her from leaving when she wanted to and caused her physical pain. The victim and the victim's parents would also testify that Niesen did not have consent to confine or move the victim.

The state then described a recorded statement Niesen gave to police on the date of the offense. Niesen stated that he was in the women's restroom by mistake, he did not touch the victim other than possibly bumping into her, the victim screamed immediately upon seeing him because he was a man in a women's restroom, and he shushed the victim and ran away because he knew police would be looking for him. He also called the victim a "pathological liar."

The state also represented that it would seek to introduce evidence of two *Spreigl* incidents: a prior felony conviction for fleeing from a peace officer and an incident in which Niesen had been caught in the women's restroom at the same Kwik Trip store on another occasion. The state explained that these incidents would rebut Niesen's claim that he was in the women's restroom by mistake, establish intent to terrorize the victim, and explain why Niesen pulled the victim backwards and told her to shush. The district court accepted the factual basis and the plea and set the matter on for sentencing.

Niesen moved for a downward dispositional sentencing departure, proposing that he would complete chemical-dependency and mental-health treatment while on probation. The district court reviewed the information and arguments submitted by counsel and denied the motion because Niesen committed the current offense while he was on probation for three separate felony cases and had left a different treatment program in July 2021 against the program staff's advice. The district court entered the conviction on the kidnapping charge pursuant to the guilty plea and sentenced Niesen to an executed 81 months' imprisonment.

Niesen appeals.

**DECISION**

Niesen presents two challenges on appeal. First, he argues that he is entitled to reversal of his kidnapping conviction and remand to withdraw his *Alford* plea, arguing that his plea is constitutionally invalid because it lacks a strong factual basis. Second, he argues that the district court erred by denying his motion for a downward dispositional sentencing departure because he is particularly amenable to probation.

**I.     The district court did not err by accepting Niesen's *Alford* plea.**

Niesen contends that the district court erred by accepting his *Alford* plea, arguing that, because the state failed to establish a strong factual basis supporting his conviction, his plea is inaccurate and therefore invalid. "To be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010) (citing *Alford*, 400 U.S. at 31). The defendant bears the burden to show inaccuracy, and we review the accuracy of a guilty plea de novo. *Id.*

"To be accurate, a plea must be established on a proper factual basis." *Id.* In the case of a typical guilty plea, the factual basis is established "by questioning the defendant and asking the defendant to explain in his or her own words the circumstances surrounding the crime." *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994); *accord* Minn. R. Crim. P. 15.01, subd. 1(8). But for *Alford* pleas, the state must establish the factual basis by other means. *See Ecker*, 524 N.W.2d at 716. "[B]ecause of the inherent conflict in pleading guilty while maintaining innocence," the factual basis for an *Alford* plea is subject to "careful scrutiny." *State v. Theis*, 742 N.W.2d 643, 648-49 (Minn. 2007). When reviewing the sufficiency of the factual basis for an *Alford* plea, we determine whether "facts exist from which the defendant's guilt of the crime charged can be reasonably inferred," *Nelson v. State*, 880 N.W.2d 852, 861 (Minn. 2016) (quotation omitted), keeping in mind that the factual basis of an *Alford* plea must be "strong," *Theis*, 742 N.W.2d at 649.

Niesen was convicted of kidnapping in violation of Minn. Stat. § 609.25, subd. 1(3), which criminalizes confining or removing a person from one place to another without consent with the purpose to "commit great bodily harm or to terrorize the victim or another." Niesen concedes that the record establishes that he confined the victim but argues that the record does not establish that he did so *with the intent to commit great bodily harm or to terrorize*. Niesen argues that, to establish the factual basis for intent to terrorize, the state was required to show that he intended to induce extreme fear of "great bodily harm."[2]

---

[2] "Great bodily harm" is defined as "bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm." Minn. Stat. § 609.02, subd. 8 (2020).

The statute does not define the phrase "to terrorize," nor does it otherwise require intent to induce fear of "great bodily harm." Rather, the statute requires only an intent to terrorize the victim or another.

We thus turn to whether the record contains evidence that Niesen intended to terrorize the victim. The term "terrorize" means "to cause extreme fear by use of violence or threats." *State v. Franks*, 765 N.W.2d 68, 74 (Minn. 2009) (defining "terrorize" for purposes of felony-stalking statute); *see* 10 *Minnesota Practice*, CRIMJIG 15.02 (2015) (jury instruction defining "terrorize" and citing *Franks*).[3] Because intent is a state of mind, evidence of intent is typically circumstantial. *State v. Cooper*, 561 N.W.2d 175, 179 (Minn. 1997). A jury may infer intent from a defendant's "words or actions in light of all the surrounding circumstances," *Nelson*, 880 N.W.2d at 860 (quotation omitted), including "the natural and probable consequences" of the defendant's actions, *Cooper*, 561 N.W.2d at 179, and the effect those actions have on the victim, *see State v. Schweppe*, 237 N.W.2d 609, 614 (Minn. 1975).

Here, the state explained that the victim, a 12-year-old girl, would testify that a man she did not know approached her from behind in a women's restroom, wrapped his arm around her neck, began to pull her into a stall while shushing her and telling her to be quiet, and did not let go until she screamed. This testimony supports a reasonable inference of intent to terrorize because it shows that Niesen used violence by pulling the victim by her

---

[3] We note that, although the jury-instruction guides are not binding law, *Rowe v. Munye*, 702 N.W.2d 729, 734 n.1 (Minn. 2005), this instruction is consistent with the statute and "does not contravene existing case law," *State v. Webster*, 894 N.W.2d 782, 787 (Minn. 2017).

neck, which caused her physical pain, and threatened her by telling her to be quiet. The victim's scream demonstrates that she was extremely fearful, and extreme fear is a "natural and probable consequence" of Niesen's conduct in these circumstances. Therefore, the evidence the state planned to introduce at trial established a strong factual basis that Niesen intended to terrorize the victim.

Because Niesen has not shown that his guilty plea was inaccurate, we affirm his conviction.

## II. The district court did not abuse its discretion by denying Niesen's motion for a downward dispositional departure.

Niesen asserts that the district court abused its discretion when it denied his motion for a downward dispositional departure, arguing that there were substantial and compelling reasons to depart from the sentencing guidelines' presumptive imprisonment disposition because he is particularly amenable to probation.

The Minnesota Sentencing Guidelines require a district court to impose the presumptive sentence "unless there exist identifiable, substantial, and compelling circumstances to support a departure." Minn. Sent'g Guidelines 2.D.1 (2020). "Because the guidelines' goal is to create uniformity in sentencing, departures are justified only in exceptional cases." *State v. Solberg*, 882 N.W.2d 618, 625 (Minn. 2016). A district court has broad discretion to grant or deny a motion to depart from the guidelines, and we will not reverse absent a clear abuse of that discretion. *See State v. Givens*, 544 N.W.2d 774, 776 (Minn. 1996). If the district court carefully considered the testimony and information before it on the motion to depart, we will affirm its decision. *State v. Van Ruler*,

378 N.W.2d 77, 80-81 (Minn. App. 1985). "Only the rare case will merit reversal based on the district court's refusal to depart." *State v. Johnson*, 831 N.W.2d 917, 925 (Minn. App. 2013) (quoting *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981)), *rev. denied* (Minn. Sept. 17, 2013).

A district court may depart from a guidelines sentence based on a defendant's particular amenability to probation. Minn. Sent'g Guidelines 2.D.3.a(7) (2020). Particular amenability to probation can be demonstrated by factors such as "the defendant's age, his prior record, his remorse, his cooperation, his attitude while in court, and the support of friends and/or family." *State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982). "[A]menability to probation depends on an offender's ability to comply with the conditions of probation and benefit from the opportunity for rehabilitation that probation affords." *State v. Hickman*, 666 N.W.2d 729, 732 (Minn. App. 2003).

Here, the district court properly considered the testimony and information before it when it denied Niesen's motion for a departure. It stated on the record that it had reviewed Niesen's memorandum, an acceptance letter from a treatment facility, records from a prior treatment facility, a letter from the Minnesota Department of Corrections, and the presentence-investigation report. Upon receiving a chemical-use assessment during the hearing, the district court took a recess to review the assessment. The district court heard arguments from counsel about all of this information and determined that Niesen was not amenable to probation. Therefore, the district court did not abuse its discretion by denying Niesen's motion for a downward dispositional departure.

8

In sum, because there was a sufficient factual basis establishing that Niesen intended to terrorize the victim, we affirm his conviction. And because the district court carefully considered the information before it on Niesen's motion for a downward dispositional departure, we affirm his sentence.

**Affirmed.**