**STATE of Minnesota, Appellant,**

v.

**Jeffrey Douglas LAW, Respondent.**

**No. C5–00–998.**

Court of Appeals of Minnesota.

Nov. 15, 2000.

Review Denied Dec. 20, 2000.

Mike Hatch, Attorney General, and Susan Gaertner, Ramsey County Attorney, Jeanne L. Schleh, Assistant County Attorney, St. Paul, MN, for appellant.

Thomas C. Plunkett, Mark K. Thompson, Dudley and Smith, P.A., St. Paul, MN, for respondent.

Considered and decided by WILLIS, Presiding Judge, CRIPPEN, Judge, and HOLTAN,* Judge.

## OPINION

CRIPPEN, Judge

Appealing the trial court's stay of sentence in an attempted-murder case, the state argues that the court erred by imposing a sanction that is "strongly disproportional to the severity of the crime," and takes account of circumstances—namely rehabilitation since committing the crime—that are neither substantial nor compelling enough to furnish grounds for departure.

It is the collegial conclusion of the judges who have heard this case that the matter must be remanded for imposition of an executed sentence.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. Art. VI, § 10.

## FACTS

On October 25, 1999, respondent Jeffrey Law entered the home of his estranged wife, Erika Law. The couple began arguing and respondent attacked Erika, who was holding two infants in her arms at the time—the couple's five-month-old son and a six-month-old child Erika was taking care of as part of her daycare business. Erika tried to call 911, but respondent grabbed the phone out of her hands, ripping the cord out of the wall. Respondent told Erika he was going to kill her and began strangling her with his hands and then with a bathrobe cord. He dragged her down the stairs to the basement and strangled her to the point of unconsciousness. Before respondent left the home, he placed the two infants on a bed in the basement and checked to determine that Erika was still alive. When Erika came to, she could not stand or walk, but eventually she was able to reach the neighbors' home, where the neighbor called 911. Erika suffered a concussion and severe bruising on her face and neck. Due to her loss of consciousness, she was confused and had trouble remembering the details of what had occurred.

Soon after the incident, respondent returned to his home and called his parents, telling them he had choked Erika. He also threatened to commit suicide. Respondent's mother called 911, and police arrested respondent immediately thereafter. He subsequently pleaded guilty to attempted second-degree murder.

At the sentencing hearing in March 2000, the court heard the testimony of numerous witnesses stating they had witnessed a notable improvement in respondent's attitude and behavior since his release from jail on bail in November 1999. Respondent's father testified that his son had become a "whole different person," explaining respondent was now honest, trustworthy, dependable, and reliable. Likewise, respondent's personal counselor testified he had never seen, in the four years he had worked in his field, the level of self-accountability and honesty he had seen in respondent since his release from jail.

Ultimately, after openly wrestling with the competing considerations in what the trial court rightfully found to be an unusual case, the court determined that respondent should be sentenced to the maximum prescribed sentence of 20 years—an upward durational departure—but stayed execution of the sentence and placed respondent on probation for 20 years, ordering him to comply with various conditions.[1] The Minnesota Sentencing Guidelines call for an executed sentence of 12 years and 9 months for appellant's offense.

## ISSUE

Does the trial court's sentence come within the broad range of its discretion?

## ANALYSIS

 A trial court may depart from the sentencing guidelines if it specifies "substantial and compelling" circumstances that demonstrate why the proposed sentence is more "appropriate, reasonable, or equitable than the presumptive sentence." Minn. Sent. Guidelines II.D. This court recognizes the broad discretion of the trial court in sentencing matters and is "loath to interfere ." *State v. Case*, 350 N.W.2d 473, 476 (Minn.App.1984). But the abuse of discretion standard is not "a

---

1. We take into account the trial court's exacting conditions of stay. *See State v. Sejnoha*, 512 N.W.2d 597, 601 (Minn.App.1994), *review denied* (Minn. Apr. 21, 1994) (upholding departure in part because of thorough conditions of stay). The conditions included the following: serve one year in the Ramsey County workhouse; pay restitution for medical expenses in the amount of $3,516.75; abstain from drug, alcohol, and chemical use; be subjected to random drug and alcohol testing; attend AA meetings and successfully complete steps one through five of the AA program; get a psychiatric evaluation; attend mental-health counseling; have no contact with his wife; and stay current with child-support payments.

limitless grant of power to the trial court." *State v. Warren*, 592 N.W.2d 440, 451 (Minn.1999). This court will modify a departure if it has a "strong feeling" the sentence is inappropriate to the case. *State v. Malinski*, 353 N.W.2d 207, 209 (Minn.App.1984) (quotation omitted), *review denied* (Minn. Oct. 16, 1984).

■ We must ultimately determine whether the trial court's decision is "unreasonable, inappropriate, excessive, unjustifiably disparate, or not warranted by the findings of fact." Minn.Stat. § 244.11, subd. 2(b) (1998). In balancing the mitigating and aggravating factors of a given case, a departure must be reversed if it understates the degree of the defendant's culpability. *See, e.g., Warren*, 592 N.W.2d at 452 (stating in cases involving multiple victims, the court will consider "whether the sentences are commensurate with the defendant's culpability and not an understatement of the defendant's criminality").[2]

■ We are also mindful in assessing the circumstances of a case that the quest for rehabilitation alone cannot be used as a basis for a downward departure and only in extraordinary circumstances should it be used as a basis for departure. *See United States v. Sklar*, 920 F.2d 107, 116 (1st Cir.1990) (stating the mere fact of rehabilitation between the date of arrest and sentencing cannot form the basis for a downward departure).

The trial court exercised its discretion with meticulous care and labored appropriately over the dilemma of this case. The court continually stated how it remained uncertain about its decision, what a strange and unusual case this was, and recognized the stark contrast between

granting the state's request for an upward durational departure and accepting appellant's request for a downward dispositional departure. Moreover, the court stressed the need for corrective consequences if appellant failed to comply with the stay conditions.

The record would permit a finding that appellant experienced rehabilitation whereby his previous problems—chemical dependency, manipulation, and aggressiveness—were altered considerably through the course of his treatment since the offense. The trial court expressed its belief, not improperly determined, that appellant was not a threat to his wife but, if anything, a threat to himself.

■ Notwithstanding our deference to the trial court's decision and the believability of the evidence respecting appellant's rehabilitation, it is the collegial conclusion of this court that the severity of appellant's violent act dictates a different result. *See State v. Behl*, 573 N.W.2d 711, 714 (Minn.App.1998) (stating an appellate court "will overturn the decision of the trial court upon reaching a 'collegial conclusion' that a sanction is disproportional to the severity of the crime" (quoting *State v. Schantzen*, 308 N.W.2d 484, 487 (Minn.1981))), *review denied* (Minn. Mar. 19, 1998). Ultimately, it is our strongly held judgment that the stay of execution in this case unreasonably depreciates the severity of the offense and thus is not supported by compelling circumstances; it constitutes an abuse of the lawful parameters of trial-court discretion.

The stay of sentence under the circumstances of this case tends to defeat the rule of law, offending the maxim attributed

2. Other authorities further confirm that the defendant's culpability is a necessary consideration in deciding the merits of a guidelines departure. *See, e.g., Bangert v. State*, 282 N.W.2d 540, 547 (Minn.1979) (stating consecutive life sentences for two separate murders were proper under the circumstances because sentence was "commensurate with culpability and not an exaggeration of defendant's criminality"); Minn. Sent. Guidelines II.D (providing departures (not just durational) from presumptive sentences should be "proportional to the severity of the offense of conviction" and should take into consideration the purpose and principles of the guidelines, such as consistency and proportionality); *Id.* II.D.2 (suggesting many of the acceptable departure factors relate to defendant's culpability or severity of the offense).

to Oliver Wendell Holmes, Jr., that "the law must keep its promises." Letter from Oliver Wendell Holmes, Jr. to Harold J. Laski (Dec. 17, 1925) *in* 1 *Holmes–Laski Letters* 806 (Mark DeWolfe Howe ed., 1953); *see also* Louis Michael Seidman, *Points of Intersection: Discontinuities at the Junction of Criminal Law and the Regulatory State*, 7 *J. Contemp. Legal Issues* 97, 105 (1996) (citing to Holmes's maxim for the proposition that "[t]he task of the law is to devise a set of incentives that will determine conduct in a fashion that produces the most good"). While we view rehabilitation as one of the primary purposes of criminal justice, we cannot disregard the equally important goals of deterrence of the individual, of others, and even retribution. Minn. Sent. Guidelines III.A.2 (recognizing the penal objectives of "retribution, rehabilitation, public protection, restitution, deterrence, and public condemnation of criminal conduct").

## DECISION

Because there were children present at the time of the offense, the trial court imposed an upward durational departure from the presumptive sentence of 12 years 9 months to the statutory maximum of 20 years. But the court tied that determination explicitly to its decision to stay execution of the sentence, explaining to appellant that if his purported rehabilitation was not successful he should suffer the statutory maximum. Under these circumstances, we remand for the trial court to impose an executed sentence for a duration to be determined as required by law.

**Reversed and remanded for resentencing.**