*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-1247, A15-1255**

State of Minnesota,
Appellant (A15-1247),
Respondent (A15-1255),

vs.

Randall Samuel Stempfley,
Respondent (A15-1247),
Appellant (A15-1255)

**Filed July 18, 2016**
**Affirmed in part, reversed in part, and remanded**
**Worke, Judge**
**Dissenting, Halbrooks, Judge**

Cass County District Court
File No. 11-CR-13-1392

Cathryn Middlebrook, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, St. Paul, Minnesota (for Randall Samuel Stempfley)

Lori Swanson, Attorney General, St. Paul, Minnesota;

Christopher J. Strandlie, Cass County Attorney, Walker, Minnesota; and

Scott A. Hersey, Special Assistant County Attorney, Minnesota County Attorney's Association, St. Paul, Minnesota (for State of Minnesota)

Considered and decided by Worke, Presiding Judge; Halbrooks, Judge; and Smith, Tracy M., Judge.

UNPUBLISHED OPINION

**WORKE**, Judge

In these consolidated appeals, Stempfley challenges his conviction and sentence arguing that: (1) the evidence was insufficient to prove that he aided and abetted third- and fourth-degree criminal sexual conduct; (2) under the law-of-the-case doctrine, the sufficiency of the evidence should be assessed against the jury instruction, which in this case included an unnecessary additional element; and (3) the district court erred in imposing a ten-year conditional-release term. The state argues that the district court abused its discretion in granting Stempfley's motion for a downward dispositional departure. We affirm Stempfley's conviction and the district court's downward dispositional departure, but reverse the ten-year conditional-release term and remand so the district court can correct the sentence.

## FACTS

On October 30, 2012, Tina Smith invited 14-year-old B.D. over to the home of Smith's grandmother to drink alcohol. B.D. had previously met Smith. Smith told B.D. that her boyfriend Randall Samuel Stempfley, who was also present, had bought a bottle of rum. Stempfley was 38 years old.

B.D. drank rum with Stempfley and Smith for a while but eventually left. Smith told B.D. to call her later. When B.D. did so, Smith told her to come to a cabin she and Stempfley had for the night. At the cabin, Stempfley, Smith, and B.D. drank more rum. B.D. drank 10 or 11 shots of rum. The one-room cabin had a bed upon which all three sat.

At some point, Stempfley and Smith began kissing. B.D. moved across the room, became "weirded out," and began texting and calling people on her phone. B.D. testified that she became tired and lay on one side of the bed next to Stempfley and Smith who were no longer kissing. Smith then got on top of B.D. and started kissing her. B.D. testified that Smith removed B.D.'s pants and made contact with B.D.'s vagina with her mouth and tongue.

B.D. testified that she told Smith to stop because she was "straight" and said, "This is weird. I'm not like that." Smith then asked Stempfley to grab B.D.'s hand or arms, and Stempfley held B.D.'s hand or arms down.[1] B.D. testified that while Stempfley held her hand down, Smith penetrated B.D.'s vagina with her tongue. B.D. was scared, and "tr[ied] to get them off" of her. B.D. testified that Stempfley and Smith digitally penetrated her vagina for a couple minutes. B.D. next remembered waking up naked next to Smith. Later the next day, Stempfley told B.D., "Oh, wow! That was a crazy night. That was so fun."

On November 1, 2012, B.D. told her mother what had happened, law enforcement was notified, and B.D. went to the hospital to be examined. B.D. told law enforcement that she had gotten really drunk at the cabin, and that Smith kissed her and asked if she was bisexual. B.D. stated that she blacked out, and when she woke up, Stempfley was holding her hands down and Smith was "going down" on her.

Stempfley told law enforcement that he knew B.D. was a minor, and admitted that he bought the rum. He also said that he slept in the same bed as Smith and B.D, but denied

---

[1] B.D. testified that Stempfley held only one of her hands down, but Smith testified that Stempfley held down both of B.D.'s arms. Prior to trial, B.D. told the investigator that Stempfley held both of her hands down.

doing anything sexual with B.D. Stempfley was charged with third- and fourth-degree criminal sexual conduct, furnishing alcohol to a minor, and aiding and abetting third- and fourth-degree criminal sexual conduct.

Smith pleaded guilty to third-degree criminal sexual conduct before testifying at Stempfley's trial. Smith testified that she put her mouth and tongue on B.D.'s vagina and asked Stempfley to grab B.D.'s arms and he did. Smith said B.D. took her own clothes off when Smith started kissing her, and that while she had her mouth and tongue on B.D.'s vagina, Stempfley was on the bed or the couch. Smith also testified that nothing was forced on B.D., that B.D. never said "no," and that B.D. did not push her away. Smith said that Stempfley did not touch B.D. that night beyond holding her arms.

At the close of the trial, the district court gave the following instructions to the jury regarding aiding and abetting third- and fourth-degree criminal sexual conduct:

> A defendant's presence constitutes aiding if:
> First, the defendant knew his alleged accomplice [was] going to or [was] committing a crime;
> Second, the defendant intended that his presence and actions aid the commission of a crime; and
> Third, the defendant's presence and actions did aid the commission of the crime.

The jury acquitted Stempfley of third- and fourth-degree criminal sexual conduct, but found him guilty of furnishing alcohol to a minor and aiding and abetting third- and fourth-degree criminal sexual conduct. At sentencing, Stempfley had a criminal-history score of six stemming from eight prior felonies dating back to 1994 and multiple misdemeanors. The presumptive guidelines sentence was 140 months in prison for aiding and abetting third-degree criminal sexual conduct.

4

The district court sentenced Stempfley to 365 days in jail for furnishing alcohol to a minor, and granted Stempfley's motion for a downward dispositional departure on the criminal sexual conduct, staying execution of the 140-month sentence for 15 years, subject to numerous terms of probation. The district court also imposed a ten-year conditional-release term. To justify the departure, the district court found that Stempfley played a minor or passive role in the offense. The district court explained that "Smith was the primary aggressor," and that "the train had already left the station before Mr. Stempfley got involved to the extent that he did."

Stempfley appeals his conviction and the ten-year conditional release term, and the state appeals the downward dispositional departure.

**D E C I S I O N**

*Sufficiency of the evidence*

Stempfley argues that the evidence was insufficient to convict him of aiding and abetting third-degree criminal sexual conduct because the state did not prove that he intentionally aided Smith. We disagree.

In reviewing the sufficiency of the evidence, an appellate court is limited to ascertaining whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged. *Bernhardt v. State*, 684 N.W.2d 465, 476 (Minn. 2004). When reviewing for sufficiency, the evidence is considered in the light most favorable to the verdict. *Id.* at 477.

For Stempfley to be found guilty of aiding and abetting third-degree criminal sexual conduct, the state had to prove beyond a reasonable doubt that Stempfley "intentionally aid[ed]" Smith when she committed the third-degree criminal sexual conduct offense, and that he made no reasonable effort to prevent the crime before it was committed. Minn. Stat. § 609.05, subds. 1, 3 (2012); 10 *Minnesota Practice*, CRIMJIGS 4.01, .02 (2006). A defendant's presence constitutes aiding if he: (1) knew that his alleged accomplices were going to or were committing a crime, and (2) intended that his presence and actions aid the commission of the crime. *State v. Milton*, 821 N.W.2d 789, 806 (Minn. 2012). Because the "intentionally aids" element of accomplice liability is a state-of-mind requirement, it is generally proved through circumstantial evidence. *State v. McAllister*, 862 N.W.2d 49, 53 (Minn. 2015).

In a circumstantial-evidence case, the circumstances proved must be "consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of guilt." *Bernhardt*, 684 N.W.2d 465 at 477. This court must first identify the circumstances proved at trial. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). We defer to the jury's acceptance of the proof of the circumstances and rejection of evidence that conflicted with the circumstances proved by the state. *Id*. at 598–99. Conflicting evidence is construed in the light most favorable to the verdict. *Id*. at 599. Second, this court independently examines the reasonableness of all inferences that might be drawn from the circumstances proved, including inferences consistent with a hypothesis other than guilt. *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010). Here, no deference is given to the jury's choice between reasonable inferences. *Id*. at 329–30.

The following circumstances supporting aiding and abetting third-degree criminal sexual conduct were proved at trial: (1) Stempfley knew that B.D. was a minor; (2) Stempfley supplied alcohol to B.D.; (3) Stempfley allowed B.D. into the cabin to drink alcohol; (4) Stempfley was in the same bed as Smith and B.D. while Smith used her tongue to penetrate B.D.'s vagina; (5) Stempfley held at least one of B.D.'s hands down while Smith used her tongue to penetrate B.D.'s vagina; (6) Stempfley did not attempt to stop Smith's actions; and (7) Stempfley, Smith, and B.D. slept in the same bed that night.

Stempfley argues that there is a rational inference that his act of grabbing B.D.'s hand was not done intentionally to aid Smith, because Smith was already engaged in her act. But rejecting B.D.'s testimony concerning the digital penetration would not prevent the jury from rationally concluding that Stempfley held down B.D.'s hand with the intent to aid Smith. Neither B.D. nor Smith testified that Stempfley held down B.D.'s hand or arms *in order to* digitally penetrate her. Smith and B.D. testified consistently that Stempfley held down B.D.'s hand or arms while Smith used her tongue to penetrate B.D.'s vagina. Stempfley sets forth no alternative rational hypothesis of what Stempfley actually intended to do when he held B.D.'s hand or arms down. This court "will not overturn a conviction based on circumstantial evidence on the basis of mere conjecture." *Id*. at 330. Therefore, because the only rational hypothesis explaining Stempfley's conduct is that he intended to aid Smith's conviction of the crime, the circumstantial evidence was sufficient.

*Sufficiency of the evidence when assessed against the additional unnecessary element*

Stempfley next argues that, under the law-of-the-case doctrine, the sufficiency of the evidence must be assessed against the actual instructions given to the jury, which

included an additional unnecessary element that Stempfley "did aid" Smith in committing a crime. Stempfley argues that the evidence is insufficient to prove that he "did aid" Smith.

Stempfley is correct that the jury instructions included an additional unnecessary element that presence constitutes aiding when "the defendant's presence and actions did aid the commission of the crime." The instruction given at trial mirrored the standard jury instructions. *See State v. Taylor*, 869 N.W.2d 1, 15 (Minn. 2015). After the trial in this case, the Minnesota Supreme Court held in *Taylor* that actually effectuating a crime is not an element of accomplice liability. *Id.* at 16. Because we conclude that the evidence was sufficient to prove beyond a reasonable doubt that Stempfley "did aid" in the commission of the crime, we need not address his law-of-the-case argument.

Here, legitimate inferences can be drawn from facts in the record to allow the jury to reasonably conclude that Stempfley actually did aid Smith. B.D. told Smith that she did not want to engage in sex, and B.D. tried to get Smith and Stempfley off of her when she was being assaulted. Smith asked Stempfley to hold B.D.'s hand or arms down, and Stempfley did so while Smith penetrated B.D.'s vagina with her tongue. A jury could make a reasonable inference that Smith held down B.D.'s hand or arms to prevent B.D. from leaving. It is common sense that an act which prevents a victim's escape will actually effectuate the crime against the victim. Thus, the jury could reasonably conclude that Stempfley "did aid" Smith's offense. Therefore, the evidence is sufficient to prove the additional unnecessary element.

*Downward disposition departure*

The state argues that the district court abused its discretion by granting Stempfley a downward dispositional departure based on its finding that Stempfley played a minor or passive role in the offense. We disagree.

This court affords district courts great discretion in the imposition of sentences, and "cannot simply substitute our judgment for that of the [district] court." *State v. Spain*, 590 N.W.2d 85, 88 (Minn. 1999). District courts may depart from a presumptive sentence only if "identifiable, substantial, and compelling circumstances" exist. Minn. Sent. Guidelines 2.D.1 (2012). "A district court's decision to depart from the sentencing guidelines is within that court's discretion, and will not be disturbed absent an abuse of discretion." *State v. Misquadace*, 644 N.W.2d 65, 68 (Minn. 2002). This court will not "interfere with the sentencing court's exercise of discretion, as long as the record shows [it] carefully evaluated all the testimony and information presented." *State v. Pegel*, 795 N.W.2d 251, 255 (Minn. App. 2011) (quotation omitted).

In *Williams v. State*, the Minnesota Supreme Court adopted the following general rules governing when a district court's sentencing departure may be affirmed or reversed:

> 1. If no reasons for departure are stated on the record at the time of sentencing, no departure will be allowed.
>
> 2. If reasons supporting the departure are stated, [the reviewing] court will examine the record to determine if the reasons given justify the departure.
>
> 3. If the reasons given justify the departure, the departure will be allowed.

9

> 4. If the reasons given are improper or inadequate, but there is sufficient evidence in the record to justify [the] departure, the departure will be affirmed.
>
> 5. If the reasons given are improper or inadequate and there is insufficient evidence of record to justify the departure, the departure will be reversed.

361 N.W.2d 840, 844 (Minn. 1985).

The state argues that (1) the district court did not make adequate findings to support the departure, (2) the facts do not establish substantial and compelling reasons justifying the departure, and (3) the sentence depreciates the seriousness of the offense.

The district court's stated reason for departing was that Stempfley played a "minor or passive role" in the offense. A defendant's "minor or passive role" in the crime may be used as a sole mitigating factor justifying a downward dispositional departure under the sentencing guidelines. *State v. Wittman*, 461 N.W.2d 247, 249 (Minn. App. 1990); Minn. Sent. Guidelines 2.D.3.a.(2) (2012). Therefore, the district court stated an adequate reason to support its departure.

The state further argues that the district court's use of Smith's probationary sentence as a grounds to depart was impermissible. "A defendant is not entitled to a reduction in his sentence *merely* because a co-defendant or accomplice . . . received a lesser sentence." *State v. Starnes*, 396 N.W.2d 676, 681 (Minn. App. 1986) (emphasis added). While the district court discussed Smith's probationary sentence at sentencing, its basis for departure was its finding that Stempfley played a minor or passive role. Therefore, Stempfley's dispositional departure was not based merely on Smith's probationary sentence.

Because the minor-or-passive-role reason is valid, we next examine the facts in the record to determine if the reason given justifies the departure. In most cases, whether a defendant played a minor or passive role in the offense is the type of factual issue best decided by the district court. *State v. Carson*, 320 N.W.2d 432, 438 (Minn. 1982). This is particularly true here because the district court accepted Smith's guilty plea and presided at Stempfley's trial, giving it the opportunity to assess both defendants' relative roles in the offense.

Here, the record supports the district court's finding that Stempfley played a minor or passive role compared to Smith's. As the district court noted, Smith was the primary aggressor who initiated the sexual contact. By acquitting Stempfley of acting as a principal in the third- and fourth-degree criminal sexual conduct charges, the jury concluded that Stempfley had no direct sexual contact with B.D. The record supports the district court's finding that Stempfley became involved in the crime after Smith initiated it. Stempfley's role was limited to holding B.D.'s hands or arms at Smith's request. While his role was sufficient to justify a conviction for the aiding and abetting criminal sexual conduct counts, which were based on an age differential where consent is not a defense, it matters when considering whether he played a minor or passive role in the offense. The district court is in a superior position to this court in determining whether Stempfley's conduct in the larger context of the offense was minor or passive. Therefore, because the record supports the district court's reason to depart, we defer to the district court's judgment and proper use of its discretion.

The state also argues that the probationary sentence depreciates the seriousness of the offense, is not proportional to the offense's gravity, and ignores Stempfley's criminal-history score. "In balancing the mitigating and aggravating factors of a given case, a departure must be reversed if it understates the degree of the defendant's culpability." *State v. Law*, 620 N.W.2d 562, 565 (Minn. App. 2000), *review denied* (Minn. Dec. 20, 2000). This court will modify a departure if it has a "strong feeling" the sentence is inappropriate to the case, and when it is the collegial conclusion of this court that the severity of a defendant's act dictates a different result. *Id.*

The state relies on *Law* and *State v. Schantzen*, 308 N.W.2d 484, 487 (Minn. 1981), for the proposition that the sentence in this case was disproportionate to the severity of the offense. In *Law*, this court reversed a defendant's downward dispositional departure of a stayed 20-year sentence from a presumptive 12-year executed sentence when the defendant was found guilty of attempted second-degree murder of his wife while she was holding two infants. 620 N.W.2d at 564, 566. In *Schantzen*, the supreme court reversed a defendant's upward departure of an executed 20-year sentence from the presumptive 41-month executed sentence when the defendant robbed a pharmacy for drugs and sprayed handcuffed employees with mace. 308 N.W.2d at 485–87. More recently in *State v. Soto*, the supreme court concluded that the district court abused its discretion in imposing a downward dispositional departure of a stayed 12-year sentence from a presumptive executed sentence in a case involving a violent sexual assault lasting hours. 855 N.W.2d 303, 306–07, 314 (Minn. 2014).

Here, while the district court made a significant departure from the guidelines, the nature of the offense—Stempfley restraining B.D.'s hand or arms while Smith committed criminal sexual conduct—was not as severe as the attempted murder in *Law* and the violent hours-long sexual assault in *Soto*. The sentence here was not disproportionate like the 20-year executed sentence imposed in *Schantzen* for a robbery of a pharmacy. Unlike the cases just discussed, we do not have a "strong feeling" that the sentence in this case is inappropriate and unjustifiably disparate when considering the nature of Stempfley's involvement in the offense. But for Stempfley's criminal history, the presumptive sentence for his offense would have been 36 months stayed. Minn. Sent. Guidelines 4.B. (2012). A stayed 140-month prison sentence with 365 days in jail does not depreciate the seriousness of aiding and abetting third-degree criminal sexual conduct. We will not interfere with the district court's proper use of discretion.

Finally, other factors in conjunction with the minor-or-passive-role finding support the district court's departure. Stempfley's criminal-history score, which resulted in the presumptive 140-month prison sentence, was based on felonies mostly committed before 2005. Felony offenses "decay" after 15 years after the expiration of the sentence and are not counted toward a defendant's criminal-history score. Minn. Sent. Guidelines 2.B.1.c (2012). Two felonies on Stempfley's record from 1994 and 1995 (together worth one-and-a-half criminal-history point) were nearing decay at the time of the offense in 2012. These nearly-decayed offenses exaggerated Stempfley's criminal-history score at sentencing. Furthermore, in *State v. Malinski*, this court affirmed a downward dispositional departure granted to a defendant who had an extensive criminal history, which included six prior

felonies and numerous misdemeanors. 353 N.W.2d 207, 208, 211 (Minn. App. 1984), *review denied* (Minn. Oct. 16, 1984). In affirming the departure, this court implicitly recognized that a defendant's criminal-history score is not dispositive when a substantial and compelling reason to depart from the sentencing guidelines exists. *Id.* at 210.

In addition, the strict probationary terms imposed on Stempfley give us confidence that the district court appreciated the seriousness of this offense. This court has taken into account a defendant's strict terms of probation when reviewing the appropriateness of a downward dispositional departure resulting in a stayed sentence. *See State v. Sejnoha*, 512 N.W.2d 597, 599, 601 (Minn. App. 1994) (affirming a downward departure staying a presumptive 134-month executed sentence in a criminal-sexual-conduct case involving minors when the district court imposed numerous probationary terms to monitor the defendant's progress in sex-offender treatment), *review denied* (Minn. Apr. 21, 1994); *see also Malinski*, 353 N.W.2d at 208–09 (affirming a downward dispositional departure staying a presumptive 57-month executed sentence when the district court imposed weekly face-to-face visits with the district court judge so that the judge could monitor the defendant).

Here, the district court ordered probation for Stempfley for 15 years under a number of strict terms, including, among many others: (1) abstain from drugs and alcohol; (2) no entry into bars or liquor stores; (3) obtain a chemical-dependency evaluation and attend treatment, if recommended; (4) no possession of sexually explicit material; (5) obtain a psychosexual evaluation; (6) register as a predatory offender; and (7) cooperate with law

14

enforcement during searches. If Stempfley violates any of these terms, or one of many others imposed, he may be ordered to serve 140 months in prison.

In sum, because the record supports the district court's finding that Stempfley played a minor or passive role in the offense, and because the sentence is not unjustifiably disparate when compared to Stempfley's role in the offense, we will not disturb the downward dispositional departure.

*Ten-year conditional-release period*

The parties agree that the district court erred in imposing a ten-year conditional-release term along with a stayed prison term. When a district court "commits an offender to the custody of the commissioner of corrections" for a criminal-sexual-conduct offense, the district court shall impose a ten-year conditional-release term. Minn. Stat. § 609.3455, subd. 6 (2012). Here, because the district court gave Stempfley a stayed sentence, Stempfley was never committed to the commissioner of corrections. A court may at any time correct a sentence not authorized by law. Minn. R. Crim. P. 27.03, subd. 9. A sentence that is contrary to the requirements of the applicable sentencing statute is unauthorized by law. *State v. Cook*, 617 N.W.2d 417, 419 (Minn. App. 2000), *review denied* (Minn. Nov. 21, 2000). Therefore, because the sentence does not meet the requirements of the sentencing statute, we reverse and remand so that the district court can correct the sentence by vacating the ten-year conditional-release term.

**Affirmed in part, reversed in part, and remanded.**

15

**HALBROOKS**, Judge (dissenting)

I respectfully dissent. While this court is "loath to interfere" with a district court's sentencing decision, *State v. Case*, 350 N.W.2d 473, 476 (Minn. App. 1984), the discretion afforded to the district court "is not a limitless grant of power," *State v. Warren*, 592 N.W.2d 440, 451 (Minn. 1999). Unlike the majority, I would conclude that the district court abused its discretion by imposing a downward dispositional departure in this case.

The goal of the sentencing guidelines is to "promote uniformity, proportionality, rationality, and predictability in sentencing." *Tucker v. State*, 799 N.W.2d 583, 586 (Minn. 2011). Unless there are "identifiable, substantial, and compelling circumstances" to warrant a departure from the guidelines, the district court must adhere to the presumptive sentence provided in the guidelines. Minn. Sent. Guidelines 2.D.1 (2012). "Substantial and compelling circumstances are those circumstances that make the facts of a particular case different from a typical case." *State v. Peake*, 366 N.W.2d 299, 301 (Minn. 1985). Here, the district court did not provide substantial and compelling grounds to depart from the presumptive sentence.[2]

The sentencing transcript reflects that the state requested an executed sentence at the top end of the range—168 months—because of Stempfley's actions during the assault and his criminal history. The district court's imposition of a 140-month sentence stayed for 15 years subject to 365 days in local confinement and various conditions upon release

---

[2] Typically, the district court completes a departure report for any departure from a presumptive sentence. No such report is included in the record before us. In light of the absence of any such report, we are left with the sentencing transcript as the only basis for evaluation.

is a drastic departure from the state's recommendation. The district court reasoned that Stempfley had a "minor or passive role" in the crime, stating that "the train had already left the station before Mr. Stempfley got involved to the extent that he did." *See* Minn. Sent. Guidelines 2.D.3.a.(2) (2012) (listing "minor or passive role" as a permissible mitigating factor that constitutes a reason to depart from the presumptive sentence).

Although a finding that Stempfley played a "minor or passive role" in the assault could be a proper basis for a departure, I find the district court's use of this factor to be unsupported by the facts—particularly the idea that Stempfley is somehow less culpable of an aiding-and-abetting conviction because "the train had already left the station." Stempfley was 38 at the time of the offense and knew that B.D. was 14 years old. Despite this, he furnished the alcohol that both Smith and B.D. drank. Smith used Stempfley's cell phone to speak with B.D. before B.D. came to the cabin. Stempfley allowed B.D. to come to his rented cabin and to drink to the point where she was in and out of consciousness. There is no evidence that Stempfley attempted to prevent the sexual contact between Smith and B.D. To the contrary, Stempfley was in bed with Smith and B.D. and facilitated Smith's sexual acts.

At trial, on direct examination, B.D. testified:

> A. When I say [Stempfley] was holding my hands, I mean
> he was holding my hands down.
> Q. Okay. Where was his arms?
> A. His arms were over me.
> . . . .
> Q. Okay. So his arm was over you?
> A. Yep.
> Q. Okay. Was he holding one hand or two hands?

A. Two hands. Well, he was holding one hand. He was holding this hand (indicating).

Q. Okay. What were you doing?

A. I was weirded out, and I was trying to get them off me, and I was trying to grab my clothes.

The next day, Stempfley said to B.D., "Oh, wow! That was a crazy night. That was so fun."

The evidence reflects not only that Stempfley exercised control over the events leading up to the assault but that Stempfley aided and abetted Smith by holding B.D. down while Smith performed sexual acts on her.[3] The sexual assault of B.D. by Smith may have been underway before Stempfley became involved, but Stempfley's conduct was instrumental in its continuation.

It appears from the sentencing transcript that the district court was motivated to depart from the presumptive sentence in large part because it was troubled by the disproportionate sentencing between Stempfley and Smith. Smith received a guidelines sentence that was based on her criminal-history score of zero. Stempfley had a criminal-history score of six at the time of sentencing. A defendant is not entitled to a reduction in his sentence merely because a codefendant receives a lesser sentence. *State v. Starnes*, 396 N.W.2d 676, 681 (Minn. App. 1986).

---

[3] At the sentencing hearing, the district court stated to Stempfley, "[The jury] found you guilty of holding one hand." This amounts to speculation on behalf of the district court as to the basis for the jury's decision and minimizes his conduct. It is equally possible that the jury convicted Stempfley based on its belief that he held his arm across B.D. to negate her ability to move away from Smith.

While the district court did not explicitly rely on this as a basis for departure, the transcript reflects that the district court compared the codefendants' sentences, noting that Smith received "90 days [of time served], and the request here is for 168 months to somebody that wasn't the primary aggressor but based on his apparently being the elder so to speak." The district court engaged in this comparison without any discussion of whether Stempfley's conduct was any less significant than that in a typical aiding-and-abetting case.

Further, the district court did not consider whether Stempfley is particularly amenable to probation. *See State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982) (holding that offender-related factors, such as amenability to treatment or probation, remorse, age, and cooperation, are considered when imposing a dispositional departure). If the reason cited by the district court is improper or inadequate, a departure may nevertheless be affirmed if there is sufficient evidence in the record to justify departure. *Williams v. State*, 361 N.W.2d 840, 844 (Minn. 1985). Thus, amenability to probation in this case may have otherwise justified departure.

But there is no indication that Stempfley is particularly amenable to probation. In fact, the record suggests the opposite. The PSI reveals that the authoring agent had "significant concerns going forward"; that Stempfley has a nomadic lifestyle and has "racked up a number of criminal charges in various states"; that Stempfley had a number of failed probationary terms for past offenses that resulted in commitments to prison; and that he violated conditions pending court proceedings in this case, including being convicted of an offense in another state. On this record, I cannot agree with the majority

that the district court acted within its discretion by imposing a downward dispositional departure.  I would remand for resentencing.